that if the defendant rapped that he was shooting police officers that the court would have evaluated that differently than the specific things that the defendant rapped about here. And if we look at what the court below did, the court looked at all of the rap lyrics that the government put forward. The government said here are so many lyrics that we think are relevant because they talk about how the defendant deals drugs, not just that he's a drug dealer, but how he does it. Now the credibility of the customer witnesses, those three people who testified at trial, well that was obviously of the utmost important importance at trial. And the defense, rightfully so, questioned their credibility and and I, you know, did a great job attacking them on cross and trying to show the jury, hey these people can't be trusted. One of the ways the government is able to show these people can be trusted is they corroborate each other, but specifically what they were saying the defendant did, the defendant rapped about doing. When the customer witnesses said he was driven by a woman, he gave me these drugs, this is how he contacted me. It was the terminology the defendant used in his rap lyrics and the methodology that he described. So the court didn't just say, hey let's just let in all rap lyrics. I don't like rap lyrics. They show the defendant's a bad guy. The court said, oh lyric A, that passes the test. Lyric B doesn't pass the test. And I think that conscientious balancing shows that that's enough to get in in front of the The court kept a lot out, your honor. If the court has no further questions generally, then the government will rest on its papers. Obviously I'm happy to answer any questions about the conspiracy as well. Thank you. Just briefly on the last question your honor asked about lyrics being kept out, there were, there's a cell phone involved in this, there were thousands and thousands of pages that the government had provided originally. He was just recording himself rapping? He was actually typing them like you would in a, you know, in a notebook. So yes, there were, again, what was left out, if they had come in, it would have been days and days. We're talking about gigabytes of information. And the, again, showing admissions, the Bonnie and Clyde story is the oldest story that there is as far as... There were certainly some specifics. He said he had a 38, and indeed there was a 38 found. He said he drove in a Honda, and indeed he was in a Honda when he was selling drugs. So in other words, it was more than just general artistic expressions. There were lots of details that indeed were corroborating what the customer witnesses testified. When you say driving in a Honda, just so we're clear, the If he was clairvoyancy... There's a reference to a Honda, and then he shows up in a Honda, I mean... That wasn't his car. It was somebody else's car who he met the night before. I'm saying, you could get pretty in-depth on the similarities there, but the reality is that car could have been a BMW. He met the woman the day before. So the specifics of the lyrics, I think the lyrics are classic to rap music today. Young men making money, being driven around by pretty women. Again, a Bonnie and Clyde setting. It's older than time, and Your Honor mentioned I shot the sheriff, and I tried to cite the cases in my argument point where there are people literally rapping, and in the rap video, they saw a license plate number of an actual... I believe it was a Mercedes that was found at the scene of a murder crime. I understand all of that. This is Larry Carpenter just saying, look at me. I'm a big-time drug dealer. I have pretty girls, when in fact, he had no money. He had no drugs. He had no big houses. He had no drugs. He was selling drugs. He sold two grand on the day he was arrested. He was an opportunist, which is a street-level dealer, who will say, I have fire, and if anybody writes back, I could use some. He'll go out and try to find it and bring it to them. That's not his first sale. He had made numerous sales before that. Yes, as an independent drug dealer, yes. Again, my argument is the center of a large conspiracy, everything that was provided by the customers was not enough to prove it beyond a reasonable doubt, but the rap lyrics were used to fill in those blanks, and the expert who interpreted the rap lyrics did the same. Thank you, Your Honor. Thank you. Thank you. Our next case for argument, Local Union 97 International et al. v. Niagara Mohawk Power Corporation. Thank you. Good morning. May it please the Court. I'm Rob LaBerge of Von Schoenecken King. We represent Niagara Mohawk Power Corporation, doing business as National Grid, the defendant appellant in this case. Your Honors, we filed this appeal because the company and the union did not agree to arbitrate the particular dispute at issue in this case, which involves benefits provided to post-65 retirees who, it is undisputed, are not employees under the labor contract and are not represented by Local 97. You agree, the parties did agree to arbitrate, and you agree that the arbitration agreement is enforceable. The only question is whether it applies to this case. Whether it covers these disputes involving individuals who are not employees, who are not receiving benefits under this agreement, which is part of the same introductory clause that the lower court found. But this agreement gives the retirees certain rights, does it not? In Article 20? This, it gives eligible employees, Your Honor, who retire during the term of the agreement certain rights. It does not give... So why, and if there is a dispute over those rights and whether they're being afforded those rights, why can't the union bring a grievance for arbitration? Because, Your Honor, the union doesn't represent retirees and retirees are not employees, capital E, which is a defined term under the labor contract. The company respectfully submits, Your Honor, that the words and phrases used in the grievance arbitration provision are unambiguous. When these words are given their ordinary and plain meaning in accordance with standard rules of contract construction... So let me just jump in and ask you. So what is the language in the arbitration provision that to you does, in fact, pull this out of the agreement to arbitrate? Because it does have what I would look at as fairly broad language in that specific provision. I know you talk about the other aspects of the agreement, but the arbitration clause seems broad to me. What is it in that that you suggest this is outside of that? Several things, Your Honor. First of all, I already mentioned specific reference to this agreement, capital A, which had a specific duration from... Any provision of this agreement. Any provision of this agreement. Is Article 20 not a provision of the agreement? Article 20 is a provision of the agreement, Your Honor. In that article that you mentioned, it also specifically references that the benefits described in Article 20 would be provided during the term of the agreement, specific language during the term of the agreement, and with respect to the particular reference to post... Is this not a dispute over the meaning, application, or operation of Article 20? And I'm referring to the exact language. Okay. This... Yes? No. I respectfully disagree, Your Honor. And just to answer Judge Lee's question in more detail, in addition to the introductory clause, the procedure that's laid out that the parties agreed to talks about an aggrieved employee presenting a dispute to a supervisor. It also says an aggrieved employee may have that, um, grievance presented by the aggrieved employee's steward or a local 97 representative of the aggrieved employee. The union here acknowledges that it does not represent retirees, both as a matter of law and as a matter of contract. And there are... And obviously, retirees are not employees... But isn't the union bringing this grievance on behalf of itself? You're not disputing that the union has a right to bring a grievance, are you? The union has a right to bring a grievance to resolve a dispute with respect that affects aggrieved employees, not with respect to individuals who are not covered by the agreement. And the union, I think that the lower court cited to a few cases with respect to the issue of standing and also with respect to the arbitrability section, where the court cited to cases that where a union brought an action in federal district court pursuant to Section 301 of the Labor Management Relations Act, not under the grievance procedure. And, in fact, there are remedies for disputes regarding expired labor contracts. But it's not the internal grievance procedure. The Supreme Court in Granite Rock indicated that the initial step that should be applied before deciding to apply any presumption of arbitrability is to see if the clause is, in fact, ambiguous. Here, the district court did not make a finding that the clause was ambiguous before she just applied the presumption of arbitrability. The district court concluded that this language that you focus on regarding employee as opposed to retiree, that the meaning of that was ambiguous. Later on in her decision, after she had already said that the presumption applied and applied it and relied upon it because of the determination that the clause was classically broad in the lower court's opinion, I argue that it is not nearly as broad as the lower court found. And in support of that argument, she cited to the Southern District's decision in J. Deng Chen, which actually, when you read that decision, actually supports the company's position in this case because even though there was expansive language in the arbitration clause, the court ultimately found that the dispute was not arbitrable because in other portions of the party's agreement, it was clear that that agreement to arbitrate had been limited. The same is true in this case. Our case... Which case are you talking about? What's the precedent you're talking about? It's the Southern District of New York decision in J. Deng Chen. J. Deng Chen. It's cited in the lower court's decision and we cite to it in our papers as well. I think the Third Circuit's decision in Kopp is instructive in this case where the clause was very, very broad but the Third Circuit found that despite the fact that there was broad language, that the issue involving retirees was not arbitrable under the party's agreement. I see that  but I have reserved time for rebuttal If the court has additional questions now, I'm happy to answer them. Good morning. May it please the court of Brian J. LeClair from Blipman & King, LLP for the Plaintiff Appellee Local Union 97 International Brotherhood of Electrical Workers As we all know, Your Honors, arbitrability cases sometimes present difficult and confusing issues that can often result in the proverbial judicial headache or as Judge Seibel from the Southern District once noted during a motion hearing an actual physical headache. Fortunately, Your Honors, this is not one of those cases In her decision below, Judge D'Agostino properly determined that the party's collective bargaining agreement in this case contains One of the arguments is that the union does not represent retirees. If this goes forward and the union grieves us, what kind of relief can the union obtain for retirees? How would that work? Judge Chin, as a statutory matter that is correct. The union does not represent retirees. However, nothing prevents a union and a company from agreeing to retiree benefits and often times this does happen and in that situation as we have here there are contractual benefits that were bargained for, set in stone so to speak in the written agreement that the parties must live up to There's nothing that prevents the parties from agreeing to these benefits essentially for third party beneficiaries is a way of looking at it Are you saying that it's because the union represents current employees and current employees have an interest for their own future in what they will be treated as retirees? That is in part your honor. I think on that note I think many of the points raised by the company in this case while the union has briefed its response and I think there are multiple sort of defensive so to speak to a number of these arguments The fact of the matter is this grievance aside from this whole retiree issue My question really is if the union wins what happens? The arbitrator orders the company to comply with article 22? Correct and the arbitrator could in theory award make whole remedy to the extent retirees who are and have been provided an identical medical plan as active employees under this agreement were harmed and I don't think we need to get into the weeds so to speak with respect to the merits of this issue but at the end of the day what happened was the company did not provide identical medical plans and is not providing identical medical plans to retirees because it's charging them a greater out of pocket maximum hence the underlying grievance in this case. But again just to return to in many respects the company's arguments are sort of a moot point to the extent that this underlying grievance does harm the union to the extent it bargained for these benefits and is not, company is not living up to them and it also harms the active employees who undoubtedly are employees with a capital E under the agreement and otherwise who are affected by this dispute so and I think that Judge D'Agostino, your honors, properly made note of this in her decision below. The company in its brief cited repeatedly to the Supreme Court's decisions in Tackett and Reese. I think the union is comfortable resting on its briefing on that issue. I'll just mention briefly that neither of those cases were arbitrability cases we think they're inapposite. We don't take issue with the holding in either case. We just don't think they apply here. Apples and oranges so to speak. Tackett and Reese dealt with the yard man inference which tended to favor a finding of lifetime vesting for retiree benefits in labor agreements. Here we're not talking about that. Here we're talking about arbitrability and the presumption in favor of arbitrability which is alive and well and I think which Judge D'Agostino properly applied in our view sort of as an alternative point. In other words, Judge D'Agostino's decision properly determined that this broad arbitration clause that the parties agreed to unambiguously covers the pending dispute but sort of alternatively at best what the company has done with respect to these passing references to employee and the like is raise an ambiguity which would have been resolved and was in fact resolved in favor of arbitration. If there are no other questions I'm happy to rest on our briefs. Thank you, Your Honors. Let me just start where Mr. LeClair finished. He indicated that the union has no dispute with respect to the Supreme Court's decision in Tackett and Reese. In fact, those decisions are instructive as is this court's recent decision in the Donahue versus Hochul case because all three of those decisions are really seminal decisions and recognize that labor contracts like any other contract are supposed to be interpreted using ordinary principles of contract construction. The use of inferences and presumptions all three of those courts recognize are inconsistent with the normal principles of contract construction. The Supreme Court's decision in Granite Rock which was an arbitrability case and actually helped clarify the standards to be applied by the lower courts in arbitrability cases recognizes number one that the presumption of arbitrability applies only if the arbitration clause is ambiguous. That's the first step. And the presumption is enforced in arbitration order only if that presumption is not rebutted. We respectfully submit that the lower court was in error with respect to both of those issues. But does one need to rely on the presumption of arbitrability when the contract in question explicitly says that disputes as to the meaning of the agreement will be settled in the following fashion, that being arbitration. With respect to employees and I know Judge you asked Mr. LeClair if the union brought this grievance on behalf of current employees and Mr. LeClair I think he answered in part. In fact, if you look at the grievance which is in the record, it is clear that this was not brought on behalf of active employees. It was brought on behalf of individuals who had retired years ago. The one employee who signed an authorization retired in 2006 more than 16 years ago. And the Judge Chen also asked a good question about what relief is the union seeking. The agreement that was made between the company that governs the company's treatment of retirees, that agreement was made with employees at the time that they were employees. That's true. Yes, Your Honor. And the employees the present employees have an interest in seeing that the agreements that were made between the union between the employer and the union on behalf of the employees when they retire is carried out. The union has failed to identify a single active employee who will be impacted or has been impacted by the particular section in question because the retiree benefit provisions have changed over time. And active employees are really covered by a different provision. I don't want to get into the merits because I know that's not the function of the court in deciding arbitrability. But I think that the court has raised an excellent question with respect to the relief because what is the flip side of Judge Chen's question? What if the company goes to arbitration and prevails? What's to stop it from being subject to multiple lawsuits over the same subject by individual retirees who say Local 97 wasn't representing me. I didn't have any interest in that. I think in judicial economy fairness to the parties I think that it is clear that the contract should be interpreted using ordinary principles of contract instruction. And then with respect to the other thing that the Supreme Court directed in Granite Rock is it is not necessary to have an explicit exclusion of an issue in order to rebut the presumption. We have presented forceful evidence not only with respect to the language that we say plainly means that doesn't apply to retirees, but the fact that Local 97 and its predecessors in Niagara-Mohawk have been parties to a collective bargaining agreement for 75 years. And they have never arbitrated disputes with respect to individuals who are not employees who have retired from the company under prior labor contracts. Thank you. Okay, thank you both. We'll take it under advisement. So that concludes the cases on the argument calendar. We have one case on for submission Charles Bergen v. Barbara Seals Nevergold And we will take that on submission. So thank you to our court staff and everyone here today. And with that I think we are ready to adjourn.